WALKER STEVENS CANNOM LLP
Hannah L. Cannom (SBN 245635)
hcannom@wscllp.com
Bethany M. Stevens (SBN 245672)
bstevens@wscllp.com
500 Molino Street #118
Los Angeles, CA 90013
Telephone: (213) 337-9972
Facsimile: (213) 403-4906

*Attorneys for Non-Party Apple Inc.*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CORNELL UNIVERSITY AND CORNELL RESEARCH FOUNDATION, INC., <br><br> Plaintiffs, <br><br> v. <br><br> AT&T INC., ET AL <br><br> Defendants. <br><br>———————————————— <br><br> CORNELL UNIVERSITY AND CORNELL RESEARCH FOUNDATION, INC., <br><br> Plaintiff, <br><br> v. <br><br> VERIZON COMMUNICATIONS INC., ET AL <br><br> Defendants. | Case No.: 26-mc-80064 <br><br> (Case Nos. 2:25-cv-00054-JRG (Lead Case); 2:25-cv-00055-JRG (Member Case), pending in E.D. Tex.) <br><br> NON-PARTY APPLE INC.'S NOTICE OF MOTION AND MOTION TO QUASH OR MODIFY PLAINTIFFS' SUBPOENAS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF |

NON-PARTY APPLE INC.'S NOTICE OF MOTION AND MOTION TO QUASH OR MODIFY PLAINTIFFS' SUBPOENAS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
- 1

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

Please take notice that on a date and time to be determined by the Court, California resident and non-party Apple Inc. will and hereby does move, pursuant to Federal Rule of Civil Procedure ("FRCP") 45(d), for an order quashing or modifying the Subpoena to Testify at a Deposition in a Civil Action (the "Deposition Subpoena") and the Subpoena to Produce Documents in a Civil Action (the "Document Subpoena" and, together with the Deposition Subpoena, the "Subpoenas") served upon it by Plaintiffs in *Cornell University and Cornell Research Foundation, Inc. v. AT&T Inc., et al.*, Case No. 2:25-cv-00054-JRG (Lead Case) and *Cornell University and Cornell Research Foundation, Inc. v. Verizon Communications Inc., et al.*, Case No. 2:25-cv-00055-JRG (Member Case), pending in the United States District Court for the Eastern District of Texas.

Apple moves to quash or modify the Subpoenas in the United States District Court for the Northern District of California, which is the proper district of compliance pursuant to Rule 45(c)(1) of the Federal Rules of Civil Procedure. Pursuant to Civil Local Rule 37-1, counsel met and conferred regarding this motion on March 2, 2026.

Apple makes this motion based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the concurrently filed Declaration of Hannah Cannom in support thereof, the files and records in this case, and any argument as may be presented at the hearing on the Motion.

**STATEMENT OF THE ISSUES**

1. Should the Court quash the Subpoenas because they improperly set the Western District of Texas as the place for compliance?

2. In the alternative, should the Court quash or modify the Subpoenas because Apple is working to comply with narrowed requests and to provide targeted discovery, and the balance of the requests and topics in the Subpoena are unduly broad and seek disproportionate discovery from non-party Apple?

| | |
|---|---|
| Dated this 9th day of March, 2026 | WALKER STEVENS CANNOM LLP |
| | */s/ Bethany M. Stevens* |
| | Bethany M. Stevens |
| | *Attorneys for Non-Party Apple Inc.* |

# TABLE OF CONTENTS

I.    INTRODUCTION ……………………………………………………….…..1

II.    FACTUAL BACKGROUND ……………………………………………….3

    A.  The Underlying Litigation and the Subpoenas ……………………………3

    B.  Apple Is Headquartered in this District and this District Is Where Relevant Documents, Discovery, and Witnesses Reside ……………..………...…7

III.   THE COURT SHOULD QUASH THE SUBPOENAS AS FACIALLY INVALID FOR FAILURE TO DESIGNATE THE PROPER VENUE FOR COMPLIANCE ………………………………………………………….……………… 7

IV.   IN THE ALTERNATIVE, THE COURT SHOULD MODIFY THE SUBPOENAS ………………………………………………………….……………… 10

    A.  Legal Standard …………………………………….……………………… 10

    B.  Apple Agreed to Make Source Code Available for Inspection and to Produce Additional Information Responsive to the Document Subpoena and Should Be Granted a Reasonable Time to Do So ……...………………………….…. 11

    C.  The Remainder of the Subpoenas Are Facially Overbroad and Seek Disproportionate Discovery from Non-Party Apple ..…………….....…….. 12

V.    CONCLUSION ……………………………………………………………..14

# TABLE OF AUTHORITIES

**Cases**

*Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406 (C.D. Cal. 2014) ............................................................................................................................... 11, 15

*AngioScore, Inc. v. TriReme Med., Inc.*, Case No. 12-cv-03393-YGR (JSC), 2014 WL 6706873 (N.D. Cal. Nov. 25, 2014) .................................................................................... 7, 9

*Audio MPEG, Inc. v. HP Inc.*, No. 16-mc-80271, 2017 WL 950847 (N.D. Cal. Mar. 10, 2017) 15

*Duong v. Groundhog Enterprises, Inc.*, Case No. 2:19-cv-01333-DMG-MAA, 2020 WL 2041939 (C.D. Cal. Feb. 28, 2020) ................................................................................. 14

*Fujikura Ltd. v. Finisar Corp.*, No. 15-mc-80110, 2015 WL 5782351 (N.D. Cal. Oct. 5, 2015) 10

*Gebka v. EverQuote, Inc.*, No. 1:21-MC-91391-IT, 2021 WL 3131549 (D. Mass. July 23, 2021) 9

*Gonzales v. Google, Inc.*, 234 F.R.D. 674 (N.D. Cal. 2006) .......................................................... 11

*Horizon Holdings, L.L.C. v. Genmar Holdings, Inc.*, 209 F.R.D. 208 (D. Kan. 2002) ................. 13

*Intermarine, LLC v. Spliethoff Bevrachtingskantoor, B.V.*, 123 F. Supp. 3d 1215 (N.D. Cal. 2015) ............................................................................................................................... 11

*Mattel, Inc. v. Walking Mountain Productions*, 353 F.3d 792 (9th Cir. 2003) ............................ 12

*Moon v. SCP Pool Corp.*, 232 F.R.D. 633 (C.D. Cal. 2005) ........................................................ 11

*Rankine v. Roller Bearing Co. of Am., Inc.*, Case No. 12-cv-2065-IEG (BLM), 2013 WL 3992963 (S.D. Cal. Aug. 5, 2013) ................................................................................... 12

*Sec. & Exch. Comm'n v. TCA Fund Mgmt. Grp. Corp.*, No. 20-civ-21964, 2021 WL 9440378 (S.D. Fla. June 10, 2021) .................................................................................................... 8

*Uniloc USA, Inc. v. Apple Inc.*, No. 19-cv-01692-EJD, 2020 WL 6262349 (N.D. Cal. Oct. 23, 2020) .................................................................................................................................. 9

*Williams v. Camden USA Inc.*, No. 3:19-cv-691-AJB-AHG, 2021 WL 5417516 (S.D. Cal. Nov. 19, 2021) ........................................................................................................................... 8

**Statutes**

Fed. R. Civ. P. 26 ..................................................................................................................... 10, 13

Fed. R. Civ. P. 37 ................................................................................................................. 8

Fed. R. Civ. P. 45 ............................................................................................................ 8, 10

NON-PARTY APPLE INC.'S NOTICE OF MOTION AND MOTION TO QUASH OR MODIFY PLAINTIFFS'
SUBPOENAS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
- iii

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Apple brings this Motion to quash or modify Subpoenas served by Cornell University and Cornell Research Foundation, Inc. (collectively, "Cornell") in Cornell's patent litigations against AT&T Inc. and Verizon Communications, Inc. pending in the United States District Court for the Eastern District of Texas. Apple has been diligently working with Cornell for months to negotiate a narrowed and reasonable scope of non-party discovery responsive to the Subpoenas, and it has already provided or agreed to provide the information that was the subject of Apple's pre-motion meet and confers with Cornell. Notwithstanding these efforts, this Motion has now become unavoidable because Cornell has filed a premature motion in the United States District Court for the Western District of Texas—the incorrect district to adjudicate this subpoena-related dispute under Federal Rule of Civil Procedure ("FRCP") 45—seeking to compel the documents and source code that Apple has already agreed to provide, as well as broad categories of additional information regarding over 125 Apple products.

This Court, not the court for the Western District of Texas, is the proper court to decide this dispute because Apple is headquartered in Cupertino, California. Moreover, all of the business units, custodians, documents, and source code reside in this District. As such, this District is the proper place for compliance with the Subpoenas per FRCP 45(c) and the correct District to adjudicate a dispute regarding the Subpoenas' validity and enforceability per FRCP 45(d)(1), (f). Despite explaining this reality to Cornell multiple times, Cornell chose to file its motion in Texas (and it chose to do so before the parties were at an impasse). As a result, to avoid waiver of the jurisdiction of this Court, Apple was left to file this Motion to Quash while simultaneously opposing Cornell's demands in the Texas court.

This Court should grant Apple's Motion, *first*, because Cornell's Subpoenas improperly purport to notice compliance within the Western District of Texas, at the office of Plaintiffs' counsel in Austin, Texas. It is not credibly disputed that Apple's headquarters are within this District, in Cupertino, California. Further, Cornell has not connected (and cannot connect) Austin

to any aspect of the underlying litigation, this case, or the Subpoenas; in fact, all the percipient witnesses, documents, and source code sought by the Subpoenas reside in this District. The Subpoenas thus are invalid on their face, and the Court should quash them.

In the alternative, the Court should modify the Subpoenas to limit production to the materials Apple has already produced or agreed to produce, and provide Apple with a reasonable time to comply. For context, Apple is a non-party to the underlying litigations in which Cornell has sued AT&T and Verizon for infringement of various patents related to wireless communications technology. Cornell bases its infringement allegations on compliance with WiFi 5/6 standards, and accuses various WiFi-compliant products of infringement, including certain smartphones and tablets (including but not limited to Apple iPhone and iPad products) sold by the defendants. Apple has not refused to produce documents or source code in response to the Subpoenas issued by Cornell. Instead, Apple, as a non-party, is working to narrow the vastly overbroad Document Subpoena to identify the scope of information that is relevant and necessary to Cornell while protecting Apple's sensitive trade secrets and source code. As drafted, the Subpoenas seek wide swaths of documents, information, and/or source code, and related testimony, for more than 125 Apple products. In pre-motion meet and confers, Cornell has stated that it specifically seeks: (i) identification of Broadcom WiFi chipsets incorporated in each of the accused Apple productions; (ii) identification of the firmware code for each of the identified Broadcom chipsets; and (iii) technical documents and/or source code for the Apple N1 WiFi chipset incorporated into the iPhone 17, related to the accused OFDMA, MU-MIMO, and CCA technology. To date, Apple has provided (i), is in the process of collecting (ii), and has agreed to collect (iii), subject to Cornell's agreement to provide more specificity regarding the scope of code related to OFDMA and MU-MIMO. Under the relevant Federal Rules and this Court's case law, the Court should at least modify the vastly overbroad Subpoenas to reflect the parties' agreements and provide Apple with a reasonable time to comply.

## II. FACTUAL BACKGROUND

### A. The Underlying Litigation and the Subpoenas

The underlying litigations are *Cornell University and Cornell Research Foundation, Inc. v. AT&T Inc., et al.*, Case No. 2:25-cv-00054-JRG (Lead Case) and *Cornell University and Cornell Research Foundation, Inc. v. Verizon Communications Inc., et al.*, Case No. 2:25-cv-00055-JRG (Member Case), pending in the United States District Court for the Eastern District of Texas (the "Underlying Lawsuits"), in which Cornell has sued AT&T and Verizon for patent infringement. According to Cornell, the asserted patents "read on Wi-Fi 5 (and later) enabled downlink and Wi-Fi 6 (and later) enabled uplink products, including routers, access points, smartphones, and other products, including certain Apple iPhone and iPad products." (Declaration of Hannah Cannom ("Cannom Decl.") ¶ 3, Ex. A.)

On September 23, 2025, Cornell served a Subpoena to Testify at a Deposition in a Civil Action (the "Deposition Subpoena") and a Subpoena to Produce Documents in a Civil Action (the "Document Subpoena" and, together with the Deposition Subpoena, the "Subpoenas") on Apple in the Underlying Lawsuits. (*Id.* ¶ 4, Exs. B, C.) Both Subpoenas purported to notice compliance within the Western District of Texas, at the office of Plaintiffs' counsel in Austin, Texas. (*Id.*).

The Document Subpoena consisted of nineteen broad requests, seeking broad categories of documents and other materials concerning "[Apple] Wi-Fi 5 Products," "[Apple] Wi-Fi 6 Products," and "[Apple] 3GPP Products." (*Id.* ¶ 4, Ex. B.) It broadly defined "[Apple] Wi-Fi 5 Products" to mean "all products and services sold, supplied, made for or in any other way provided by [Apple] to any of the Defendants for their sale, use, distribution or providing to their subscribers, customers or other third parties that support IEEE 802.11ac (aka W-Fi 5) or higher connectivity, including but not limited to, cellphones and tablets," including (but not limited to) over 125 identified Apple products. (*Id.*) "[Apple] Wi-Fi 6 Products" and "[Apple] 3GPP Products" were similarly defined. (*Id.*)

For example, the Document Subpoena demanded the following materials regarding each of the "[Apple] Wi-Fi 5 Products," "[Apple] Wi-Fi 6 Products," and "[Apple] 3GPP Products": documents and source code to show "the design, purpose, structure, function, features, and operation of each of [the Apple products] related to how they implement Wi-Fi 5, Wi-Fi 6, and 3GPP, respectively, including but not limited to Software Documentation, Engineering Documentation, Product Manuals, internal guidelines, operating documents, hardware design files, Software, and/or Source Code" (RFP 4); "Product Requirement Documents, Market Requirement Documents, and all other specifications and requirement documents, and/or communications … related to how [the Apple products] implement Wi-Fi 5, Wi-Fi 6, and 3GPP, respectively" (RFP 5); "technical information relating to Your Wi-Fi 5, Wi-Fi 6 and 3GPP Products" (RFP 8); "[a]ll documents sent to, received from and/or generated by" the Wi-Fi Alliance, the 3rd Generation Partnership Project, and the Federal Communications Commission regarding Apple's Wi-Fi 5, Wi-Fi 6 and 3GPP Products (RFP 9-11); "[a]ll documents" concerning whether Apple's Wi-Fi 5 Products and Wi-Fi 6 Products "implement, are advertised or otherwise are represented as implementing any or all part of the" IEEE 802.11 ac and IEEE 802.11ax standards, respectively (RFP 12-13); "[a]ll documents reflecting or otherwise concerning absolute or relative technical and economic benefits, advantages, and/or value of, desire for, and/or demand for any Wi-Fi 5, Wi-Fi 6 or 3GPP Products, and/or technology supplied or otherwise provided by You to any of the Defendants (directly or indirectly)" (RFP 17); "[d]ocuments sufficient to show the costs, revenues, sales, shipments or the providing in any manner to any of the Defendants any Wi-Fi 5, Wi-Fi 6 and 3GPP Products, including the dates of such transactions" (RFP 18). (*Id.*)

The Deposition Subpoena contained the same wide-sweeping definitions for "[Apple] Wi-Fi 5 Products," "[Apple] Wi-Fi 6 Products," and "[Apple] 3GPP Products," and similarly demanded extensive categories of broad testimony, including for example regarding: "[t]he design and operation of Your Wi-Fi 5, Wi-Fi 6 and 3GPP Products" (Topic 1); Product Requirement Documents, Market Requirement Documents, and all other specifications and

requirement documents, and/or communications … related to how [the Apple products] implement Wi-Fi 5, Wi-Fi 6, and 3GPP, respectively" (Topic 2); "[a]bsolute or relative technical and economic benefits, advantages, and/or value of, desire for, and/or demand for each product, service, and/or technology supplied or otherwise provided by You to Defendants (directly or indirectly)" (Topic 10); and "[c]osts to Defendants for each product, service, and/or technology supplied or otherwise provided by You to any of the Defendants (direct or indirectly)" (Topic 11). (*Id.* ¶ 4, Ex. C.)

Apple timely objected to the Subpoenas on October 10, 2025. (*Id.* ¶ 5, Ex. D.) In particular, Apple objected to jurisdiction in a location other than this district, stating that "Apple's headquarters are located in the Northern District of California, and not in the Eastern District of Texas where this action is pending, not in the Northern District of Texas where the Subpoena was served, and not in the Western District of Texas where the compliance with Subpoena was noticed. Pursuant to Federal Rule of Civil Procedure 45, the U.S. District Court for the Northern District of California is the governing district for purposes of the Subpoena and any related motions. Nothing in these objections and responses should be interpreted as a waiver of the jurisdiction of the Northern District of California." (*Id.*) Apple also objected to each request and topic to the extent it sought information available through party discovery from one or more Defendants, that each request and topic was overly broad and unduly burdensome, and that each request and topic sought highly proprietary trade secret information from Apple. (*Id.*)

Thereafter, counsel for Apple worked diligently with Cornell to narrow the Subpoenas and to investigate, collect, and produce targeted information uniquely within Apple's control that Cornell purports to need for its case. In pre-motion meet and confers, Cornell focused its requests on (i) identification of Broadcom WiFi chipsets incorporated in each of the accused Apple productions; (ii) identification of the firmware code for each of the identified Broadcom chipsets; and (iii) technical documents and/or source code for the Apple N1 WiFi chipset incorporated into the iPhone 17, related to the accused OFDMA, MU-MIMO, and CCA technology. (*Id.* ¶¶ 6, 8.) Regarding (i), Apple twice supplemented in objections and responses to

the Subpoenas to provide the requested information. (*Id.* ¶ 9.) Regarding (ii), Apple has agreed and is working diligently to collect and produce this information, as well.[1] (*Id.* ¶ 10.) Regarding (iii), Apple has already agreed to investigate, collect and make the source code available for inspection, and on February 20, 2026 produced certain technical documents that it believed would assist in the identification of relevant, targeted code for collection and production. (*Id.* ¶ 11.)

Despite these efforts and representations by Apple, and despite Apple's venue objections, Cornell informed Apple on February 23, 2026 that it had filed a motion to compel Apple's compliance with the Subpoenas in the Western District of Texas on February 20, 2026 (the "Texas Motion"). (*Id.* ¶¶ 3, 12, Ex. A.) In that motion, Cornell clarified the scope of Apple products at issue to a list of over 125 Apple products. (*Id.* ¶ 12, Ex. E.) Cornell purported to "narrow" its demands to the following:

- For products Apple contends utilize Apple's own N1 chipset, Cornell seeks: (1) source code sufficient to show implementation of the OFDMA (Orthogonal Frequency Division Multiple Access), MU-MIMO (Multi-User Multiple Input Multiple Output), CCA (Clear Channel Assessment), and backoff duration functionalities; (2) product brochures, datasheets, or other technical documents detailing features and Wi-Fi 5/6 compliance; (3) technical documentation such as programming guides, firmware interface specifications, technical design and/or architecture specifications, hardware APIs or DDIs, and training guides/manuals for engineers regarding the Wi-Fi 5/6 functionality; (4) development documentation explaining the design objectives and intended benefits of the chipset and Wi-Fi 5/6 functionality; (5) documents concerning the technological or economic benefits of the Wi-Fi 5/6 functionality and features thereof; and (6) testing documentation showing compliance with Wi-Fi 5/6 or later standards.

- For the products Apple contends do not utilize the N1 chipset, where a third party supplies the relevant wireless components, Cornell seeks an even narrower set of documents: (1) product brochures, specifications, or datasheets regarding Wi-Fi functionality, including those that identify any third-party supplied hardware or software components; (2) development and testing documentation related to Wi-Fi 5/6 or higher capabilities; (3) documents concerning the technological or economic value of the Wi-Fi 5/6 functionality and features thereof; and (4) the identification of the Wi-Fi driver code version and sub version, which third parties require to produce relevant information to Cornell.

---

[1] Apple expects to produce this information before briefing on this Motion is complete.

- a deposition of a witness able to authenticate these documents and source code, and provide testimony regarding the functionalities to which the above-identified documents and source code relate.

((*Id.* ¶ 3, Ex. A.)

The parties met and conferred on March 2, 2026, after Cornell filed the Texas Motion. (*Id.* ¶ 13.) On that meet and confer, Apple reiterated its request that Cornell re-file its motion in this District. (*Id.*) Cornell requested, and Apple later sent, examples of courts in this District adjudicating a motion where a subpoena notices compliance in a different district. (*Id.*) Cornell also told Apple that it would provide Apple with greater specificity into the portion of code that it is demanding. (*Id.* ¶ 13, Ex. F.) To date, Apple has not received that information from Cornell. (*Id.*)

### B. Apple Is Headquartered in this District and this District Is Where Relevant Documents, Discovery, and Witnesses Reside

Apple is headquartered in Cupertino, California. (Cannom Decl. ¶ 14.) In efforts to comply with the Subpoenas, Apple has investigated the location of relevant documents, witnesses, and source code for the N1 chipset. (*Id.* ¶ 15.) The Apple personnel with access to its business records, electronically stored information and systems related to this case are at Apple's headquarters in Cupertino, California. (*Id.*)

### III. THE COURT SHOULD QUASH THE SUBPOENAS AS FACIALLY INVALID FOR FAILURE TO DESIGNATE THE PROPER VENUE FOR COMPLIANCE

Per FRCP 45, a subpoena may command a non-party to appear for a deposition and/or produce documents, electronically stored information, or tangible things at a place "within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(1)(A), 45(c)(2)(A). A Rule 45 subpoena specifying the place of compliance as more than 100 miles from a nonparty corporation's headquarters is "invalid on its face." *AngioScore, Inc. v. TriReme Med., Inc.*, Case No. 12-cv-03393-YGR (JSC), 2014 WL 6706873, at *1 & n.1 (N.D. Cal. Nov. 25, 2014); *see also Williams v. Camden USA Inc.*, No. 3:19-cv-691-AJB-AHG, 2021 WL 5417516, at *1 (S.D. Cal. Nov. 19, 2021) ("A subpoena requiring a nonparty to produce documents at a place more than one-hundred miles away is invalid."); *Sec.*

*& Exch. Comm'n v. TCA Fund Mgmt. Grp. Corp.*, No. 20-civ-21964, 2021 WL 9440378, at *1 (S.D. Fla. June 10, 2021) ("Thus, the district of compliance for a nonparty corporation is typically where the corporation is headquartered."). Further, the court where compliance is properly required is the appropriate court to address any subpoena-related motion, unless it orders transfer of the motion to the court where the action is pending.[2] Fed. R. Civ. P. 45(c), (f). Further, Rule 37(a)(2) provides that a "motion for an order to a nonparty must be made in the court where the discovery is or will be taken." *Williams*, 2021 WL 5417516, at *1, *citing* Fed. R. Civ. P. 37(a)(2).

Here, the Subpoenas purported to compel compliance within the Western District of Texas, at the office of Plaintiffs' counsel in Austin, Texas. (Cannom Decl. ¶ 4, Exs. B, C.) Apple, however, is headquartered within this district, in Cupertino, California. (*Id*. ¶ 14.) Apple timely and consistently objected to the Subpoenas' noticed place of compliance, and it has invoked this District as the appropriate venue for compliance with the Subpoenas and any motion related thereto. (*Id*. ¶ 5, 13, Exs. D.)

For its part, Cornell does not (and cannot) dispute that Apple is headquartered within this District; rather Cornell claims that Apple "maintains multiple major campuses" and "substantial operations" within the Western District of Texas. (*Id*. ¶ 3, Ex. A.) But that Apple has Austin campuses is immaterial—indeed, Cornell has not connected Austin to any aspect of this case. *Gebka v. EverQuote, Inc.*, No. 1:21-MC-91391-IT, 2021 WL 3131549, at *3 (D. Mass. July 23, 2021). As in *Gebka*, the Apple personnel with access to its business records, electronically stored information and systems related to this case are at Apple's headquarters in Cupertino, California. (Cannom Decl. ¶ 15.) This District is therefore the proper district for compliance with the Subpoenas; as in *Angioscore*, Cornell's attempt to command Apple's compliance elsewhere renders the Subpoenas invalid on their face and the Court should quash them.

---

[2] Cornell has not sought to enforce the Subpoenas in the issuing court where the underlying litigations are pending (the Eastern District of Texas), and Apple has not consented (and does not consent) to transfer of the dispute to that court. To the extent Cornell seeks such transfer pursuant to FRCP 45(f), Apple reserves the right to oppose.

NON-PARTY APPLE INC.'S NOTICE OF MOTION AND MOTION TO QUASH OR MODIFY PLAINTIFFS' SUBPOENAS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
- 8 -

Moreover, this Court—and not the Western District of Texas—is the appropriate court to adjudicate this dispute and to determine the invalidity of, and to quash or modify, the Subpoenas. Fed. R. Civ. P. 45(d)(1). Cornell's effort to enforce the Subpoenas in the Western District of Texas because that court is the (incorrectly) designated place of compliance is nonsensical and only compounds the harm and prejudice to Apple resulting from Cornell's improper designation.[3] As explained in *Angioscore*, the amendments to Rule 45 requiring that subpoena-related motions be made in the court where compliance is required "were adopted '[t]o protect local nonparties' and provide for 'local resolution of disputes about subpoenas.'" *AngioScore*, 2014 WL 6706873, at *2 (citing Fed. R. Civ. P. 45, Advisory Comm. Notes (2013 Amendments)). These goals are only accomplished if the subpoenaing party designates a proper court for compliance per FRCP 45(c). Further, Judge Albright in the Western District of Texas recently rejected this same argument in connection with another subpoena to Apple that purported to compel compliance in Austin. In that case, *TOT Power Control, S.L. v. T-Mobile USA, Inc. et al.*, Case No. 6:21-cv-00109-ADA (W.D. Tex.), the court declined to address the plaintiff's efforts to compel Apple's compliance with a subpoena in that district until a related motion to quash was resolved by the Northern District of California.[4] (Cannom Decl. ¶ 16, Ex. G (Dkt. No. 175).) The same result should follow here.

---

[3] Cornell cites to *Uniloc USA, Inc. v. Apple Inc.* to argue that Apple has previously sought to enforce a subpoena in the venue where it demanded compliance even though it was more than one hundred miles from the subpoena target's headquarters. Cornell ignores, however, that the court there disagreed with Apple and stated that "while a non-party may voluntarily produce documents at a location more than 100 miles from its place of business, Apple cites no authority for the proposition that the Court must construe such voluntary production as consent or waiver when the subpoenaing party asks the Court to use its authority to enforce the subpoena over the non-party's objections in opposition to a motion to compel." No. 19-cv-01692-EJD, 2020 WL 6262349 (N.D. Cal. Oct. 23, 2020). The Court therefore refused to enforce the subpoena.

[4] Apple shared this decision with Cornell via email on February 25, 2026. Cornell nevertheless refused to withdraw their motion in that district and refile in the Northern District of California, despite Apple offering to expedite briefing in this District.

## IV. IN THE ALTERNATIVE, THE COURT SHOULD MODIFY THE SUBPOENAS

### A. Legal Standard

Federal Rules of Civil Procedure 26 and 45 work in tandem to protect non-parties from disproportionate discovery requests. Rule 26 provides that discovery must be relevant and proportional to the needs of the case (Fed. R. Civ. P. 26(b)(1)), and that the court must limit discovery that is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). In turn, Rule 45 requires "[a] party or attorney responsible for issuing and serving a subpoena [to] take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena," and instructs that "the court for the district where compliance is required ***must*** quash or modify a subpoena that … subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A) (emphasis added); *see also Fujikura Ltd. v. Finisar Corp.*, No. 15-mc-80110, 2015 WL 5782351, at *10 (N.D. Cal. Oct. 5, 2015) ("The subpoena power is a substantial delegation of authority to private parties, and those who invoke it have a grave responsibility to ensure it is not abused.") (quoting *Theofel v. Farey-Jones*, 359 F.3d 1066, 1074 (9th Cir. 2004)).

To determine if a subpoena is improper, courts will balance "the burden to the subpoenaed party against the value of the information to the serving party . . . ." *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005). "Concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs in a Rule 45 inquiry." *Amini*, 300 F.R.D. at 409 (internal quotations and citations omitted); *see also Intermarine, LLC v. Spliethoff Bevrachtingskantoor, B.V.*, 123 F. Supp. 3d 1215, 1218-19 (N.D. Cal. 2015) ("the Ninth Circuit has long held that nonparties subject to discovery requests deserve extra protection from the courts") (citations omitted). Further, "[o]nce the nonparty shows that the requested information is a trade secret or confidential commercial information, the burden shifts to the requesting party to show a 'substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the

person to whom the subpoena is addressed will be reasonably compensated.'" *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 684 (N.D. Cal. 2006) (quoting Fed. R. Civ. P. R. 45(d)(3)(C)).

### B. Apple Agreed to Make Source Code Available for Inspection and to Produce Additional Information Responsive to the Document Subpoena and Should Be Granted a Reasonable Time to Do So

In pre-motion meet and confers, Cornell focused its requests on (i) identification of Broadcom WiFi chipsets incorporated in each of the accused Apple productions; (ii) identification of the firmware code for each of the identified Broadcom chipsets; and (iii) technical documents and/or source code for the Apple N1 WiFi chipset incorporated into the iPhone 17, related to the accused OFDMA, MU-MIMO, and CCA technology. (Cannom Decl. ¶ 8.) Apple has already collected and produced (i), and has agreed and is working diligently to collect and produce (ii). (*Id*. ¶¶ 9, 10.) Regarding (iii), Apple has already agreed to investigate, collect and make the code available for inspection, and on February 20, 2026—prior to receiving service of the Texas Motion—produced certain technical documents that it believed would assist in the identification of relevant, targeted code for collection and production. (*Id*. ¶ 11.) On the parties' most recent meet and confer after Cornell filed the Texas Motion, Cornell conceded that it would need to provide Apple with more targeted information about the code that it demands, and Cornell has agreed to provide Apple with that information. (*Id.* ¶ 13, Ex. F.) Apple is also willing to authenticate its produced documents and code. (*Id*. ¶7.)

To the extent the Court is does not quash the Subpoenas, it should modify them to seek only the two remaining categories of information described in the prior paragraph that Apple is already collecting and producing, and it should provide Apple with a reasonable amount of time to complete its collection and production. In its motion to compel filed in the Western District of Texas, Cornell has requested a production date of March 25, 2026, well in advance of the April 16, 2026, close of fact discovery. Apple has indicated it will work toward that date.

### C. The Remainder of the Subpoenas Are Facially Overbroad and Seek Disproportionate Discovery from Non-Party Apple

The Subpoenas, as served, are overbroad on their face. *See Rankine v. Roller Bearing Co. of Am., Inc.*, Case No. 12-cv-2065-IEG (BLM), 2013 WL 3992963, at *3 (S.D. Cal. Aug. 5, 2013), *citing Mattel, Inc. v. Walking Mountain Productions*, 353 F.3d 792, 813 (9th Cir. 2003) ("The subpoena should be tailored to request only information reasonably necessary to address specific issues in the case."); *Horizon Holdings, L.L.C. v. Genmar Holdings, Inc.*, 209 F.R.D. 208, 215 (D. Kan. 2002) (finding that requests to non-parties that seek "any and all documents" are overly broad, vague, and ambiguous on their face). Further, and as described in detail below, the Subpoenas seek disproportionate discovery on non-party Apple. *See* Fed. R. Civ. P. 26(b)(1) Advisory Comm. Notes (2015 Amendment) (explaining the Federal Rules of Civil Procedure require that all discovery be "proportional to the needs of the case," a change that is designed to discourage discovery overuse).

The additional discovery sought by Cornell is disproportionate to the needs of the case and should be refused. The Subpoenas identify (but are "[b]y way of example, but in no way intended to limit [Apple's] response") over 125 Apple products. The Subpoenas as drafted seek, for example, "all other specifications and requirement documents, and/or communications, regardless of name that were used to define product requirements and/or specifications and/or changes/revisions/modifications/enhancements." (*See generally*, Cannom Decl. ¶ 4, Exs. B, C.) The sheer volume of collecting and producing such information related to the vast number of Apple products is improper.

Further, Cornell has not met its burden to establish the proportionality of such vast swaths of Apple proprietary information here. Cornell cannot credibly claim to have the requisite substantial need for all documents responsive to the Subpoenas as drafted, nor can it credibly dispute the impact upon Apple if the Court compelled compliance with the Requests as-drafted. Even the "narrowed" universe of documents sought by Cornell in the Texas Motion remain overbroad and premature. In recent meet and confers after filing the Texas Motion, Cornell has conceded the overbreadth of its demand for "source code sufficient to show implementation of

the OFDMA (Orthogonal Frequency Division Multiple Access), MU-MIMO (Multi-User Multiple Input Multiple Output), CCA (Clear Channel Assessment), and backoff duration functionalities," and has told Apple that it will provide Apple with greater specificity as to the code it is demanding. (Cannom Decl. ¶ 13, Ex. F.) Moreover, the remainder of the documents are either publicly available (e.g. "product brochures, datasheets, or other technical documents detailing features and Wi-Fi 5/6 compliance;" "testing documentation"), available from the Defendants in the underlying litigation ("documents concerning the technological or economic benefits of the Wi-Fi 5/6 functionality and features thereof"); or are not relevant to the underlying litigation and/or do not exist ("training guides/manuals for engineers regarding the Wi-Fi 5/6 functionality;" "development documentation explaining the design objectives and intended benefits of the chipset and Wi-Fi 5/6 functionality"). Apple has explained that certain of these categories of documents simply do not exist (*see id*. ¶ 19), and that the demand for these documents in the Texas Motion is improper.

To date, Apple has dedicated substantial time to compiling for Cornell the Broadcom chipset information for over 125 Apple products. (Cannom Decl. ¶ 17.) Apple is now undertaking to provide the corollary Apple firmware version number that corresponds to each product which is also taking many hours to provide. (*Id.* ¶ 18.) Indeed, this information is not information contained in documents that can be produced in the ordinary course of business, so compiling this information is ongoing. (*Id.*) In addition to this work, the narrowed requests also span the work done by many different groups at Apple and require interviews and investigation across multiple teams within the company. Nevertheless, to date, Apple has agreed to and undertaken significant efforts to comply with narrowed (though still overbroad) non-party demands from Cornell. *See e.g., Duong v. Groundhog Enterprises, Inc.*, Case No. 2:19-cv-01333-DMG-MAA, 2020 WL 2041939, at * 3 (C.D. Cal. Feb. 28, 2020) (subpoena requests were unduly burdensome where collection and review of documents would require participation of multiple employees across more than one business group).

Finally, Cornell's request that Apple provide a witness for deposition is improper. On the parties' first meet and confer, Apple and Cornell both stated that they hoped to avoid a deposition and agreed to table the question of a deposition until Apple completed its production. (Cannom Decl. ¶ 7.) On that call, Apple expressed a willingness to provide, and Cornell expressed a willingness to accept, a declaration authenticating any documents produced in lieu of a deposition. (*Id*.) Apple's position remains unchanged—a declaration authenticating and documents and source code produced is sufficient here, and a deposition is improper. Beyond authentication, the topics in the Deposition Subpoena—which cover over 125 Apple products—are so facially broad as to make preparation of an Apple witness virtually impossible. Even Cornell's "narrowed" request for a witness to "provide testimony regarding the functionalities to which the [requested] documents and source code relate" fails to identify with particularity any narrow, targeted testimony sought, let alone to establish that Cornell's need for such testimony exceeds the burden to Apple. *See Amini*, 300 F.R.D. at 412 ("Preparing and sitting for a deposition is always a burden, even when documents are not requested, particularly for a non-party"); *Audio MPEG, Inc. v. HP Inc.*, No. 16-mc-80271, 2017 WL 950847, at *6 (N.D. Cal. Mar. 10, 2017) (quashing deposition subpoena where, while deponent showed no compelling burden, the court acknowledged that "sitting and preparing for a deposition is always somewhat burdensome").

## V. CONCLUSION

For the foregoing reasons, Apple respectfully requests that the Court quash the Subpoena in its entirety.

Dated this 9th day of March, 2026     WALKER STEVENS CANNOM LLP

                                                    */s/ Bethany M. Stevens*
                                                    Bethany M. Stevens

                                             *Attorneys for Non-Party Apple Inc*.